UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.K. INTERNATIONAL, PTY., LTD.,

                                        Plaintiff,

        -v-

AGRIKO S.A.S.,

                                        Defendant.

Case No. 06-CV-13259 (KMK)

OPINION AND ORDER

Appearances:

John Alan Orzel, Esq.
DeOrchis, Wiener & Partners, LLP
New York, NY
*Counsel for Plaintiff*

Peter Skoufalos, Esq.
Brown Gavalas & Fromm LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Defendant Agriko S.A.S. seeks to vacate an Order of Maritime Attachment obtained by

Plaintiff J.K. International, Pty., Ltd.,[1] pursuant to the Federal Rules of Civil Procedure

Supplemental Admiralty Rule E(4)(f) ("Rule E(4)(f)"), and to stay the action in favor of

arbitration in London, England.  Defendant argues, inter alia, that Plaintiff's claims are premature

and not ripe for adjudication by this Court.  For the following reasons, Defendant's Motion to

---

        [1]In addition to vacating the Attachment, Defendant also seeks an order directing the
immediate release of Defendant's funds, and an order barring further attachments of Defendant's
property by Plaintiff under this Attachment.  (Def.'s Mem. of Law in Supp. of Mot. to Vacate
Maritime Attach. and for a Stay of this Action in Favor of London Arbitration 1 ("Def.'s Mem.
of Law").)

Vacate the Attachment is GRANTED.

## I. Background

_____On November 15, 2006, Plaintiff obtained an Order of Maritime Attachment from this Court in the amount of $709,371. (Aff. of Peter Skoufalos Ex. G.) After the Court issued the Attachment, Defendant moved pursuant to an Order to Show Cause to vacate the Attachment. The Court held a hearing on Defendant's Motion to Vacate the Attachment pursuant to Rule E(4)(f) on December 19, 2006.[2]

_____Plaintiff's Verified Complaint, which accompanied the Attachment, asserts three causes of action against Defendant. First, Plaintiff alleges that Plaintiff and Defendant entered into a contract by which Plaintiff agreed to buy a quantity of grain from the port of Kavkaz, Ukraine for delivery to the port of Chittagong, Bangladesh. (Verified Compl. ¶ 6; Aff. of Peter Skoufalos Exs. B, C.) Under the agreement, Defendant was obliged to sell the grain to Plaintiff. (Verified Compl. ¶ 6.) Plaintiff arranged for the M/V VOC PROGRESS to act as the carrying vessel pursuant to a Bulk Grain Charter Party with the owners of the M/V VOC PROGRESS. (*Id.*) Defendant was not a party to the vessel charter agreement for the M/V VOC PROGRESS. Due to delays in loading the M/V VOC PROGRESS, demurrage charges in the amount of $444,490 were incurred by Plaintiff and due to the owners of the M/V VOC PROGRESS under the terms of the charter party. (*Id.* ¶ 7.) Plaintiff alleges that under its contract with Defendant, Plaintiff is

---

[2]As has become all too common an occurrence with maritime attachments, Defendant brought to the Court's attention at the December 19th hearing that Plaintiff had attached twice as much security as was permitted by this Court's Order of Maritime Attachment. The excess funds were not released by the garnishee banks until approximately December 23, 2006, and only then with the assistance of an Order by this Court. (John A. Orzel, Esq. Letter to the Court, December 21, 2006; Stipulation and Order for the Release of Funds, Doc. No. 12.)

entitled to full indemnity from Defendant for the demurrage charges owed to the vessel's owners. (*Id.*)

As a second cause of action, Plaintiff alleges that Plaintiff and Defendant entered into a similar contract for the sale and transport of grain from the Ukraine to Bangladesh.  (*Id.* ¶ 11; Aff. of Peter Skoufalos Ex. A.)  The Charter Party agreement between Plaintiff and the vessel owners, to which Defendant again was not a party, provided for transportation of the grain aboard the M/V FULL RICH.  (Verified Compl. ¶ 11.)  As with the M/V VOC PROGRESS, Plaintiff claims that Defendant must indemnify Plaintiff for $47,773 in demurrage charges that were incurred as a result of delays in loading the M/V FULL RICH.  (*Id.* ¶ 12.)  Plaintiff also claims that Defendant failed to load the minimum required cargo of grain aboard the M/V FULL RICH and has brought a deadfreight claim against Defendant for $42,764.  (*Id.* ¶ 13.)

Plaintiff's third cause of action against Defendant is for breach of contract.  Plaintiff alleges that Defendant's failure to fully indemnify Plaintiff for loses incurred under the M/V VOC PROGRESS and M/V FULL RICH charter agreements has caused Plaintiff to sustain additional loses totaling $174,334 in the form of legal fees, interest on the funds paid by Plaintiff, and expenses from attempts at collecting the debts owed by Defendant.  (*Id.* ¶ 17.)

The three grain contracts at issue also incorporate, by reference, provisions which govern arbitration of claims arising under the contracts.  All three contracts provide that additional terms and conditions not found in the contracts are governed by "GAFTA 49."  (Aff. of Peter Skoufalos Exs. A, B, C.)  GAFTA is an acronym for the Grain and Feed Trade Association, which provides

arbitration services to parties that adopt GAFTA's standard contract forms.[3]  Under Paragraph 24

of the GAFTA 49 agreement, all disputes between the Parties are to be resolved in London

pursuant to the GAFTA arbitration rules.  (*Id.* ¶ 13, Ex. D.)  Arbitration of Plaintiff's claims

against Defendant is underway in London.  (*Id.* ¶ 25.)  The arbitration, however, has not

proceeded under the GAFTA arbitration rules.  Instead, Defendant's English solicitor proposed,

and Plaintiff agreed to, commencing the arbitration before the London Maritime Arbitration

Association ("LMAA").  (Decl. of John A. Orzel in Opp'n to Def.'s Mot. to Vacate Maritime

Attachment ¶ 9, Exs. 7, 9, 10 ("Decl. of John A. Orzel").)

## II.  Discussion

### A.  Standard of Review

To obtain a maritime attachment, a plaintiff must comply with Supplemental Admiralty

Rule B ("Rule B"), which states in relevant part:

> If a defendant is not found within the district, . . . a verified
> complaint may contain a prayer for process to attach the
> defendant's tangible or intangible personal property - up to the
> amount sued for - in the hands of garnishees named in the process
> . . . .  The court must review the complaint and affidavit and, if the
> conditions of this Rule B appear to exist, enter an order so stating
> and authorizing process of attachment and garnishment.  The clerk
> may issue supplemental process enforcing the court's order upon
> application without further court order.

Fed. R. Civ. P. Supp. R. B(1)(a)-(b).

Rule E(4)(f) allows any person whose property has been attached pursuant to Rule B an

opportunity to appear before a district court to contest the attachment.  Rule E(4)(f) states, in

---

[3]Additional information regarding GAFTA can be found on the Internet at
http://www.gafta.com.

relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. R. E(4)(f).  "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 n.5 (2d Cir. 2006).  To sustain an attachment, a plaintiff must show that it has fulfilled the "filing and service requirements of Rules B and E" and that:  "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment."  *Id.* at 445 (footnote omitted).  If a plaintiff fails to demonstrate that it has met the requirements of Rules B and E, the district court must vacate the attachment.  *Id.* at 445.  Maritime plaintiffs, however, are not required to prove their case at this stage.  *See Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.*, No. 05 Civ. 7955, 2006 WL 3019558, at *3 (S.D.N.Y. Oct. 23, 2006).

Attachments may otherwise only be vacated "in certain limited circumstances."  *Aqua Stoli*, 460 F.3d at 444.  A district court may vacate an attachment if the defendant shows that:  "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise."  *Id.* at 445 (footnote omitted).

5

B.  Analysis

Defendant advances several arguments for vacatur of the Attachment.  This Opinion only discusses one of those grounds - Defendant's ripeness objection - because it is dispositive of the issue before the Court, and the Court agrees with Defendant on this point.  Therefore, the Court will not reach Defendant's remaining arguments in favor of vacatur so as to not issue an advisory opinion.  *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993) (reaffirming the principle that "a federal court [lacks] the power to render advisory opinions" (quotation marks omitted and alterations in original)); *accord Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001).

Defendant argues that Plaintiff's Verified Complaint only states a claim for indemnity against Defendant.  Defendant further argues that this dispute is not ripe because Plaintiff has not incurred any actual liability to any third parties (in this case, the vessel operators) arising under the sales contracts or the charter agreements.  Defendant contends that this action is premature until Plaintiff's liability to third parties has been determined or Plaintiff has made payment to a third party.  Plaintiff, at oral argument on the motion, disputed Defendant's claim that the Verified Complaint relied exclusively on an indemnity claim.  Plaintiff maintains that they have asserted claims for indemnity and direct causes of action against Defendant.  Also at oral argument, Plaintiff informed the Court that an informal claim had been lodged by the vessel owners against Plaintiff.

It is undisputed that an arbitration in London between the Parties has commenced with the selection of arbitrators by both Parties.  (Aff. of Peter Skoufalos ¶ 25; Decl. of John A. Orzel

6

¶ 9.)  What is unclear is whether Plaintiff's claims in the Verified Complaint and the London arbitration state claims solely for indemnification.  The Court agrees with Defendant that Plaintiff's Verified Complaint and the claims raised in the London arbitration only state claims for indemnity.  All three of Plaintiff's claims for relief are explicitly tied to claims of indemnity. (Verified Compl. ¶¶ 7, 8, 9, 12, 14, 15, 17.)  For example, Plaintiff's first cause of action seeks $444,490 from Defendant for demurrage, and states that "[b]y virtue of [Plaintiff's] contract with Defendant . . . [Plaintiff] is entitled to full indemnity from AGRIKO for the amount of demurrage paid to the owners of the VOC PROGRESS."  (*Id.* ¶ 7.)  The remaining two claims contain similar language, and all three claims make clear that Plaintiff is seeking indemnification from Defendant.  Based on the evidence submitted by Plaintiff, the same is true of the London arbitration.  At oral argument, Plaintiff produced a letter from Defendant's English solicitor which discusses the basis for the claims to be arbitrated.  (Davies Battersby Letter to Ital Bras, Feb. 2, 2006.)  In the letter, the solicitor concludes by saying that "Agriko deny that they are bound to indemnify JKI."  (*Id.*)  That letter reinforces Defendant's argument that Plaintiff's claim is for indemnity.  Plaintiff, whose burden it is to show why the Attachment should not be vacated, has not offered any evidence to rebut this characterization of the London arbitration.

Plaintiff's claims against Defendant are therefore for indemnity only, and Plaintiff must show that its indemnity claim is ripe.  It is well established that "[a] claim for indemnity . . . requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity."  *The Toledo*, 122 F.2d 255, 257 (2d Cir. 1941); *see also Atlantic Richfield Co. v. Interstate Oil Transp. Co.,* 784 F.2d 106, 111 (2d Cir. 1986) (noting the

indemnity claims based on potential liability are permitted only in limited circumstances and that a showing of actual liability is otherwise required); *Evergreen Marine Corp. (Taiwan) Ltd. v. Global Terminal & Container Servs.*, No. 99 Civ. 10544, 2000 WL 1683449, at *3 (S.D.N.Y. Nov. 9, 2000) (quoting *The Toledo*).  The Second Circuit, however, has held that "a district court *may* in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion." *Patricia Hayes Assoc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76, 82 (2d Cir. 2003); *see also Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge."). Accordingly, it is within the discretion of district courts to allow a party to obtain security for an otherwise premature indemnity claim. *See Patricia Hayes*, 339 F.3d at 82.

Defendant argues that Plaintiff has not carried its burden to show that Plaintiff has incurred, or even is likely to incur, any liability from the vessel owners which underlies Plaintiff's claims for indemnity against Defendant.  The Court agrees.  Plaintiff has not offered any evidence to suggests that the vessel owners intend to bring suit against Plaintiff.  Plaintiff's unsubstantiated statement at oral argument that the vessel owners were preparing a claim against Plaintiff is not enough.  In addition, in the month that has passed since the Court heard oral argument on this motion, Plaintiff has failed to produce any evidence to substantiate its claim made at oral argument.  *Patricia Hayes*, 339 F.3d at 81 (noting that sureties had ample time to supplement the record to establish ripeness of its claim).  Nor has Plaintiff submitted any evidence to show that it has paid the vessel operators damages for the demurrage or deadfreight claims.

The fact that Plaintiff has not incurred any liability from the vessel owners, however, does not end the matter.  Next, the Court must consider whether it will exercise its discretion to uphold the Attachment, even though the claim is not currently ripe.  The Second Circuit made clear in *Greenwich* that "[t]he prematurity objection has been ignored only in isolated situations under peculiar factual circumstances."  339 F.2d at 905.  The *Greenwich* court cited approvingly three cases which, "in light of the overwhelming equitable position of the plaintiff," the district judge "disregarded the prematurity of plaintiff's claim."  *Id.* at 905.  One of those cases was *The Lassell*, 193 F. 539 (E.D. Pa. 1912), in which the district court overlooked the prematurity of the claim because it was certain to mature within an matter of hours.  193 F. at 540-42; *see also Greenwich*, 339 F.2d at 906.

In reaching its decision, the Second Circuit distinguished cases like *The Lassell* from the facts in *Greenwich*.  In *Greenwich*, the plaintiff's indemnity claims were premature because it was "exceedingly probable" that the plaintiff would not need to sue for indemnification.  339 F.2d at 905.  The court also relied on the fact that no judgment had been entered against the plaintiff and no lawsuit had been brought against the plaintiff.  *Id.* at 905-07.  Therefore, the principle this Court draws from *Greenwich* is that a premature claim likely can be dismissed, unless some set of peculiar facts about the case and the equities of the case favor the plaintiff.  See *Patricia Hayes*, 339 F.3d at 82-83.  Here, Plaintiff has failed to persuade the Court that it should categorize Plaintiff's case as an exception to the rule.

In cases where courts of this district have chosen to exercise their discretion to uphold the plaintiff's attachment, there was some evidence in the record upon which the court could conclude that the plaintiff was likely to incur liability from a third party.  *See, e.g.*, *Daeshin*

9

*Shipping Co. v. Meridian Bulk Carriers, Ltd.*, No. 05 Civ. 7173, 2005 WL 2446236, at \*2 (S.D.N.Y. Oct. 3, 2005) (upholding attachment and distinguishing *Greenwich* because, based on documentary evidence, there was evidence that a damage claim would be passed along and asserted against the plaintiff); *Hibiscus Shipping, Ltd. v. Novel Commodities S.A.*, No. 04 Civ. 2344, at 3-4 (S.D.N.Y. July 8, 2004) (Order denying motion for vacatur of attachment) (stating that a claim letter was sufficient to demonstrate ripeness); *Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F. Supp. 189, 191 (S.D.N.Y. 1987) (noting that action had been brought *in rem* against ship owner).  This case is unlike the preceding cases because there is nothing in the record, other than Plaintiff's unsubstantiated statement at oral argument, to suggest that a lawsuit against Plaintiff, for which Plaintiff can then sue Defendant for indemnity, is on the horizon. These set of facts draw Plaintiff's case closer to cases in this district in which the plaintiff's claims have been rejected as premature.  *See T&O Shipping, Ltd. v. Lydia Mar Shipping Co.*, 415 F. Supp. 2d 310, 315-16 (S.D.N.Y. 2006) (vacating attachment because, in part, claims against plaintiff had been initiated but not yet resolved), *rejected on other grounds by Aqua Stoli*, 460 F.3d at 446; *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, No. 05 Civ. 4550, 2005 WL 2218025, at \*2 (S.D.N.Y. Sept. 9, 2005) (holding that attachment was premature because London arbitration had not been initiated); *Seatrans Shipping Corp. v. Interamericas Marine Transp., Ltd.*, No. 97 Civ. 2329, 1997 WL 214939, at \*1 (S.D.N.Y. Apr. 29, 1997) (declining to attach security for contingent liabilities).  Plaintiff's statement at oral argument is simply too thin a reed to rest on when Plaintiff carries the burden of defending the Attachment.  Accordingly, in the exercise of its discretion, the Court will not continue the attachment premised on unripe indemnity claims.

## III. Conclusion

For the reasons stated above, Defendant's Motion to Vacate the Attachment is

GRANTED. Plaintiff, and all garnishees, are directed to immediately release Defendant's

attached funds and Plaintiff is barred from seeking further attachment of Defendant's funds

pursuant to the vacated Attachment. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated:        February 12, 2007
              New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

11

Service List:

John Alan Orzel, Esq.
DeOrchis, Wiener & Partners, LLP
61 Broadway
26th Floor
New York, NY 10006
(212) 344-4700
Fax: (212) 422-5299
*Counsel for Plaintiff*

Peter Skoufalos, Esq.
Brown Gavalas & Fromm LLP
355 Lexington Avenue
New York, NY 10017
(212) 983-8500
Fax: (212) 983-5946
*Counsel for Defendant*